# EXHIBIT A

■120

# Isuzu Finance of America, Inc.

**Secured Promissory Note**

| **Borrower:** | Nivo Solar LLC | **Lender/Creditor:** | **ISUZU FINANCE OF AMERICA, INC.** | Date: | 10/17/2022 |
|---|---|---|---|---|---|
| Address: | 18719 **Big Elm** Drive | Address: | 2500 Westchester Ave., Suite 312 | | |
| | Cypress, TX 77433 | | Purchase, New York 10577 | | |
| | | | Attention: **Operations** | | |

| Year | Make | Model | Vehicle Identification Number | License Number (if applicable) | | Use For Which Purchased |
|---|---|---|---|---|---|---|
| 2023 | Isuzu | NPR-HD Crew | JALC4J16XP7012585 | | ☒ NEW<br>☐ Demonstrator<br>☐ Other | ☒ BUSINESS OR COMMERCIAL |

Description of Vehicle's Body/Attachments: _____ 16' Van body _____
Vehicle Body/Attachments Serial Numbers: _____
Gross Vehicle Weight: _____ 14500 _____
Address where Vehicle will be located:
Street Address: _____ 18719 Big Elm Drive _____
City/State/Zip: _____ **Cypress, TX** 77433 _____

Interest Rate: 4.97 % per annum.

| | | |
|---|---|---|
| 1. Vehicle Cash Sales Price | | $95,000.00 |
| 2. Net Trade-in Less Liens | | $0.00 |
| 3. Cash Down Payment | | $25,000.00 |
| 4. Net Vehicle Cash Sales Price (1-2-3) | $70,000.00 | |
| 5. Other Taxable Charges (Explain) | $0.00 | |
| 6. Sales Tax | $7,076.17 | |
| 7. Registration/Title Fees | $402.50 | |
| 8. Other Charges | | |
| Acquisition Fee | $250.00 | |
| Dealer Doc Fee | $150.00 | |
| 9. Total Itemized Charges (5 through 8) | | $7,878.67 |
| 10. Amount Financed (4 + 9) | | $77,878.67 |
| 11. Finance Charge | | $10,246.33 |
| 12. Other (Explain) | | |
| 13. Total Obligation (10+11+12) | | $88,125.00 |

Borrower agrees to pay the "Total Obligation" (Item 13) in accordance with the following schedule (and any additional page(s) of schedule attached):

| No. of Installments | First Payment Date | Payment Amount | Total |
|---|---|---|---|
| 60 | | $1,468.75 | $88,125.00 |

If shown below, Borrower has elected to finance certain services through this Contract. The terms of each service are contained in separate agreement(s), and Borrower agrees that Lender collects such fees and charges for the service provider only as an accommodation to Borrower and such agreements are not part of this Contract. The Lender is not responsible for any services, disposables or insurance obligations.

| Service | Term (mos.) | Total Charge |
|---|---|---|
| | | $0.00 |
| | | |
| | | |
| **Total Charge Is Included In "Vehicle Cash Sales Price"** | | |

1.     **Promise to Pay and Interest.** The below-signed borrower, and if more than one, each below-signed borrower, jointly and severally (the "**Borrower**"), promises to pay in full the Total Obligation set forth in Item 13 above to Isuzu Finance of America, Inc. ("**Lender**") in lawful money of the United States of America, with interest thereon as herein provided, to be paid in the manner set forth herein.  All interest due under the Loan Documents (as defined below) shall be computed on the basis of a 360-day year and accrue on a daily basis for the actual number of days elapsed.  Borrower agrees to pay an effective rate of interest that is the Interest Rate set forth on page 1 (the "**Interest Rate**").  Borrower shall also be liable for and shall pay when due any other charges or fees paid or to be paid in connection with the Loan Documents.  In addition to the Total Obligation, Borrower agrees to pay all other amounts owed to Lender under this Note and the other Loan Documents (collectively with the Total Obligation, the "**Indebtedness**") when due.  Payment of the Indebtedness shall be made to Lender at such place as Lender or its successor may designate from time to time in writing.  Lender reserves the right to require payment on this Secured Promissory Note to be made by wired federal funds or other immediately available funds.  "**Loan Documents**" shall mean this Secured Promissory Note (this "**Note**"); all other notes (or other instruments) made by, or other obligations of, Borrower to Lender; any guaranty(ies) of any payment or performance of the Indebtedness; and all other agreements or documents evidencing, guaranteeing, securing, or otherwise relating to this Note or the credit evidenced hereby, as any or all of such documents may be executed or amended from time to time.

2.     **Security Interest.**  In order to secure payment of the Indebtedness and complete and full performance of any Loan Party's obligations to Lender under the Loan Documents, now existing or at any time entered into (the "**Secured Obligations**"), Borrower hereby grants Lender a security interest in and to the Vehicle and such other equipment and goods as are described above (collectively, the "**Equipment**"), together with all present and future attachments, accessions, replacements, parts, proceeds (including insurance proceeds), income, earnings, accounts, rights to payment (including monetary obligations, whether or not earned by performance), chattel paper, electronic chattel paper, general intangibles, payment intangibles, promissory loans, warranties, service contracts, documents, and records now or hereafter arising from the Equipment (collectively, the "**Collateral**").  Borrower authorizes Lender to file a financing statement, or a photocopy or other reproduction of this Note, or of any financing statement, to perfect its security interest.  Principal shall bear interest at the Interest Rate from the date of disbursement until the applicable due date, whether due by acceleration or otherwise.  Any payment due on a date which is a date when banking institutions are not open to the public under the laws of the State of New York shall be due on the next succeeding date on which such institutions are open.  All Indebtedness not paid when due shall bear interest from the due date, until paid at a rate (the "**Default Rate**") which is the lesser of sixteen percent (16%) per annum or the maximum rate permitted under applicable law. Borrower is responsible for assuring that a lien on the Collateral in favor of the Lender is properly recorded on any title to the Collateral and that such lien remains in full force and effect until all amounts due Lender hereunder shall have been paid in full.

IFAI – Secured Prom Note

3120

3.      **Receipt and Application of Payments**.  Payments shall not be deemed received by Lender until good funds are actually received by Lender. Payments in respect of the Secured Obligations and any proceeds of the Collateral when received by Lender in cash or its equivalent, will be applied in reduction of the Secured Obligations in such order and manner as Lender may direct in its sole discretion, and Borrower irrevocably waives the right to direct the application of such payments and proceeds and acknowledges and agrees that Lender shall have the continuing and exclusive right to apply any and all such payments and proceeds in the Lender's sole discretion, notwithstanding any entry to the contrary upon any of its books and records.

4.      **Prepayment**.  So long as no Default or Event of Default shall have occurred and be continuing and Borrower shall have given Lender at least fourteen (14) days prior written notice, Borrower shall have the option to prepay this Note on any installment Due Date set forth on page 1 of this Note (or any accompanying schedule referred to on page 1 of this note) (each, an "**Installment Due Date**") for an amount (the "**Prepayment Amount**") equal to (1) any unpaid Payment Amounts and all other amounts due on or before such Installment Due Date, plus (2) the principal outstanding on the books and records of the Lender on such Installment Due Date, plus (3) any applicable sales taxes.  Payment of the Prepayment Amount, together with all other amounts due and owing by Borrower under the Note (including, without limitation, the scheduled Payment Amount) on or before the Installment Due Date, shall be made on the Installment Due Date in immediately available funds.  If Borrower shall fail to pay all amounts required to be paid under the Note on the Installment Due Date, the Note shall continue in full force and effect and Borrower agrees to reimburse Lender for all reasonable attorney's fees, costs, expenses and liabilities incurred in connection therewith.

5.      **Late Charges**.  If any payment of principal and interest or any other Indebtedness is not received in full by Lender within ten (10) days after its due date, then in addition to all other rights and remedies of Lender, a late charge equal to ten percent (10%) of the amount due and unpaid will be charged to Borrower or such lesser amount as shall be the maximum permissible late charge thereon.  Such late charge shall be immediately due and payable upon receipt of written notice from Lender and constitute "**Indebtedness**" and a "**Secured Obligation**" under this Note.

6.      **No Counterclaims, Deductions, or Offsets**.  All payments and obligations of Borrower under the Loan Documents will be made and performed without counterclaim, deduction, defense, deferment, set-off, or reduction.

7.      **Insurance and Risk of Loss**.  All risk of loss, damage or destruction of the Equipment will at all times be on Borrower.  Borrower will keep the Equipment insured at Borrower's expense against liability in an amount as required by Lender or, if in excess thereof, the amount required under applicable law, and loss or damage by fire, theft and other customary risks for the greater of the Equipment's full insurable value or the Indebtedness, with a deductible not to exceed $2,500 per item of Equipment, or such lesser amount as shall be required by applicable law.  Coverage and insurer will be subject to Lender's reasonable approval. Each policy shall name Lender as loss payee and will further provide that Lender's interest can not be invalidated by any act, omissions or neglect of any party other than Lender and that the insurer will give Lender thirty (30) days' advance written notice of any policy cancellation or non-renewal, whether such cancellation or non-renewal is at the direction of Borrower or insurer.  Borrower will promptly deliver a copy of each policy or an insurance certificate acceptable to Lender prior to any advancement of funds hereunder, and will later provide proof of renewal at least 30 days prior to expiration or cancellation.  If Borrower fails to so insure the Equipment, Lender may purchase such insurance at Borrower's expense, the purchase of which need not include liability or protection of Borrower's interest.  Borrower hereby authorizes and  irrevocably appoints Lender as Borrower's attorney-in-fact, coupled with an interest, with full power of substitution,  to execute and endorse all documents, checks, or drafts in Borrower's name and to submit any proof of loss to collect such insurance.

8.      **Borrower's Representations, Warranties, and Agreements**.  Borrower represents, warrants, and agrees that: (a) this Note evidences a loan obtained by it, and the Equipment is to be used by it, solely for business and commercial purposes; (b) prior to signing this Note, Borrower read and understood the provisions hereof, and agrees to all the terms and conditions contained herein; (c) except for the security interest granted to Lender, the Collateral will remain free from all liens and security interests; (d) all information supplied by Borrower in any financial, credit, or accounting statement to Lender is and will be true, correct and genuine, and Borrower consents to the Lender's prior review of Borrower's credit reports prior to the date of this Note and to the ongoing review of Borrower's credit reports during the term of the credit evidenced by this Note; (e) Borrower has full authority to borrow the credit evidenced by this Note for the purposes provided for herein and to enter into each Loan Document to which it is a party, and in so doing it is not violating any law, regulation or agreement; and (f) Borrower has duly executed and delivered this Note and has taken all necessary and appropriate actions to make each Loan Document to which it is a party binding and enforceable against Borrower in accordance with its terms. Borrower covenants and agrees that:  (i) it shall not allow a Blocked Person to have an ownership interest in or control of Borrower, (ii)  it shall defend at its own cost any action, proceeding or claim affecting the Collateral; (iii) it shall maintain each item of the Equipment in good operating condition, repair, and appearance, all in conformity with all governmental regulations, insurance policies, and any warranties; (iv) it shall promptly pay all taxes, assessment, license fees and other public or private charges when levied against the Collateral or any Loan Document; (v) it shall obtain a certificate of title on each item of Equipment showing Lender's first priority security interest and preserve and perfect Lender's security interest, such that such security interest shall at all times be a first priority perfected security interest subject to no other liens or encumbrances by authorizing Lender to file financing statements covering the Collateral and also execute any required financing statements; (vi) it shall not misuse, secrete, sell, rent, encumber or transfer any item of Equipment; (vii) that Lender may enter any premises at any reasonable time to inspect the Equipment; (viii) it shall provide Lender with quarterly and annual financial statements upon request of Lender; and (ix) it shall reimburse Lender immediately after written notice for any expenses incurred by Lender in enforcing Borrower's obligations under any Loan Document.  [As used herein, the term "Blocked Person" means any person or entity that is now or at any time: (A) on a list of Specially Designated Nationals issued by the Office of Foreign Assets Control ("OFAC") of the United States Department of the Treasury or any sectoral sanctions identification list, or (B) a person or entity whose property or interests in property are blocked by OFAC or who is subject to sanctions imposed by law.]

9.      **Events of Default**.  Each of the following shall be an event of default under this Note and the other Loan Documents (an "**Event of Default**"):  (a) failure by the Borrower, or any other person (each, a "**Loan Party**"; and collectively with the Borrower, the "**Loan Parties**") that from time to time is obligated to Lender under any of the Loan Documents, to pay when due (i) any amount due by such Loan Party under any of the Loan Documents, or (ii) any other amount due by a Loan Party to Lender under any other agreement or contract or indebtedness of any kind; (b) failure by any Loan Party to perform any obligation not involving the payment of money, or to comply with any other term or condition applicable to such Loan Party, in any of the Loan Documents and such obligation or term or condition remains unsatisfied after ten (10) days' written notice to such Loan Party; (c) the breach of any covenant, or any representation or warranty made by any Loan Party in any of the Loan Documents or otherwise or any information delivered by any Loan Party to Lender in obtaining or hereafter in connection with the credit evidenced by this Note is materially incomplete, incorrect, or misleading as of the date made or delivered; (d) any Loan Party (i) is unable or admits in writing its inability to pay its monetary obligations as they become due, (ii) makes a general assignment for the benefit of creditors or (iii) applies for or acquiesces in the appointment of a trustee, receiver, or other  custodian for such Loan Party or any of the property of such Loan Party or a trustee, receiver or other custodian is appointed for such Loan Party or any of the property of such Loan Party; (e) commencement of any insolvency or bankruptcy proceeding, or any similar proceeding under any federal, state, local, or foreign law by or against any Loan Party; (f) the death, incompetence, dissolution, or liquidation of any Loan Party; the consolidation or merger of any Loan Party with any other person or entity; or the taking of any action by any Loan Party toward a dissolution, liquidation, consolidation, or merger; (g) any Loan Party or any other person on behalf of any Loan Party claims that any Loan Document or any lien or security interest in any of the Collateral is not legal, valid, binding, or enforceable against any Loan Party, or that that the priority of any lien or security interest securing any of the Secured Obligations is different than the priority represented and warranted in the Loan Documents; (h) any of the Collateral is lost or destroyed; (i) Lender in good faith believes that the prospect of payment or performance hereunder is impaired; (j) there shall be a material change in the management, ownership or control of any Loan Party; (k) if there shall occur an (i) appropriation, (ii) confiscation, (iii) retention, or (iv) seizure of control, custody or possession of any Collateral by governmental authority including, without limitation, any municipal, state, federal or other governmental entity or any governmental agency or instrumentality (all such entities, agencies and instrumentalities shall hereunder collectively be referred to as "**Governmental Authority**"); (l) if anyone in the control, custody or possession of any Collateral or any Loan Party is accused, alleged or charged

3120

(whether or not subsequently arraigned, indicted or convicted) by any Governmental Authority to have used any Collateral in connection with the commission of any crime (other than a misdemeanor moving violation); or (m) the occurrence of any condition or event that is a default or is designated as a default or event of default or an **"Event of Default"** under any other Loan Document or in any other agreement, contract, or indebtedness of any Loan Party to Lender.

10.     **Rights and Remedies of Lender**.  Upon the occurrence of an Event of Default, Lender may, at its option, and without demand or notice: (a) declare the Indebtedness to be immediately due and payable, whereupon all of the Indebtedness shall be immediately due and payable;  (b) without notice or demand or legal process, take possession of the Collateral wherever located and, for this purpose, may enter upon the property occupied or under the control of Borrower; (c) require Borrower to make the Collateral available to Lender at a place to be designated by Lender; (d) at the expense of Borrower, make repairs to any item of Equipment deemed necessary by Lender; and  (e) with or without obtaining possession of the Collateral or any part thereof, sell the same at a public or private sale(s).  The proceeds of any sale(s), after deducting all expenses and costs (including reasonable attorneys' fees and expenses) shall be applied to the Indebtedness or any other indebtedness of Borrower to Lender and any surplus remaining thereafter shall be paid to Borrower or to any other party who may be legally entitled to such surplus. At any sale or disposition, and as permitted by law, Lender may purchase any or all of the Collateral and/or accept a trade of property for all or any portion of the purchase price.  All rights and remedies are cumulative, not alternative, and shall inure to the benefit of Lender and its successors and assigns.  No liability shall be asserted or enforced against Lender under this section except for Lender's intentional wrongful acts.  Lender may in its sole discretion waive an Event of Default or allow a cure of an Event of Default.  Any waiver will not constitute a waiver of any other Event of Default.  Delay, discontinuance, or failure to exercise any remedy shall not be a waiver of such remedy or of any other right or remedy of Lender, or of the TIME IS OF THE ESSENCE provision.  To the extent permitted under applicable law, Borrower expressly consents to and authorizes a court with jurisdiction to issue, by hearing without notice, such orders as may be necessary to enforce the terms of this Note, granting to Lender such powers as Lender shall need to enforce this Note.  Any such court is directed to not require a bond of Lender, the parties agreeing that time is of the essence to protect Lender.  To the extent permitted under applicable law, Borrower expressly waives any notice of sale or other disposition of the Collateral and of any other exercise of any right or remedy of Lender existing after the occurrence of an Event of Default; and that to the extent that such notices cannot be waived, any notice given to Borrower at the address set forth on page 1 of this Note (or to such other address as provided in writing by Borrower) by registered or certified mail at least five (5) days before the date of sale shall be deemed reasonable and to fully satisfy the requirement for the giving of notice to Borrower.

11.     **Transfer or Assignment**.  Lender may at any time transfer its rights and/or delegate its obligations under the Loan Documents or otherwise negotiate this Note in whole or in part, without any notice to or the consent of any Loan Party.  The rights and obligations of Borrower may not be assigned or delegated.

12.     **Binding Effect**.  This Note shall be binding upon Borrower and inure to the benefit of Lender and its successors and assigns. In addition and as permitted under applicable law, NO LOAN PARTY SHALL ASSERT AGAINST ANY ASSIGNEE OR TRANSFEREE OF LENDER ANY CLAIMS OR DEFENSES SUCH LOAN PARTY MAY HAVE AGAINST LENDER.

13.     **Collection Costs and Other Costs, Expenses and Fees.**  In addition to the principal, interest, and late payment charges (if any), Borrower shall pay Lender on demand, and Lender shall be entitled to collect all costs and expenses of collection, including, without limitation, reasonable attorneys' fees and expenses, incurred in connection with enforcement of its rights and remedies hereunder and under the other Loan Documents, the protection or realization of the Collateral or in connection with Lender's collection efforts, or in connection with any bankruptcy or other judicial proceeding, whether or not suit on this Note or any foreclosure proceeding is filed.  If this Note is terminated for any reason prior to the expiration of the original Term, then Borrower shall pay to Lender $300.00 on demand for processing the early termination.  All such costs, expenses, and fees shall constitute "**Indebtedness**" and "**Secured Obligations**" and shall be payable on demand.

14.     **Usury; Partial Invalidity**.  At no time shall the interest rate (or the Default Rate or other amounts paid or collected hereunder) exceed the highest rate allowed by applicable law for the type of loan evidenced hereby.  Should Lender ever collect interest at a rate that exceeds such applicable legal limit, such excess will be credited to the outstanding principal balance of the loan evidenced hereby.

15.     **Severability**.  If any provision of any of the Loan Documents is unenforceable, such provision shall be modified to the minimum extent possible to make such provision enforceable, and the enforceability of the other provisions of the Loan Documents shall not be affected.

16.     **Choice of Law**.  The Loan Documents (including all matters of construction, validity, performance and the creation, validity, enforcement or priority of the lien of, and security interests created by, this Note in or upon the Collateral) and all related controversies shall be governed in all respects by, and construed in accordance with, the laws of the State of New York, without reference to conflicts of law (other than Section 5-1401 of the New York General Obligations Law), except as required by mandatory provisions of law and except to the extent that the validity or perfection of the lien and security interest hereunder, or remedies hereunder, in respect of any particular Collateral are governed by the laws of a jurisdiction other than the State of New York.

17.     **Notices and Demands**.  All demands or notices under the Loan Documents shall be in writing (including, without limitation, telecopy or facsimile - receipt confirmed) and mailed, telecopied, or delivered to the address specified on page 1 of this Note or in writing by the party to which such notice is given.  Any demand or notice mailed shall be mailed first-class mail, post-prepaid, return-receipt requested.  Demands or notices shall be effective upon the earlier of (i) actual receipt by the addressee, or (ii) the date shown on the return receipt, fax confirmation, or delivery receipt.

18.     **Rescission or Return of Payments**.  If at any time or from time to time, whether before or after payment and performance of the Indebtedness in full, all or any part of any amount received by the Lender as payment of any Indebtedness, must or is claimed to be subject to avoidance, rescission, or return to Borrower or any other party for any reason whatsoever, such Indebtedness and any liens, security interests, and other encumbrances that secured such Indebtedness at the time such avoidance, rescission, or returned payment was received by Lender shall be deemed to have continued in existence or shall be reinstated, as the case may be, all as though such payment had not been received.

19.     **Waivers**.  Borrower hereby (a) waives, to the fullest extent permitted under applicable law, the right to assert any statutes of limitations as a defense to any of the Indebtedness, (b) waives, to the fullest extent permitted under applicable law, presentment, notice of dishonor, protest, notice of protest, notice of intent to accelerate, notice of acceleration, and all other notices or demands of any kind (except notices specifically provided for in the Loan Documents), and (c) agrees that Lender may enforce this Note and any other Loan Document against Borrower without first having sought enforcement against any other Loan Party or any Collateral securing the Indebtedness.

BORROWER HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED UNDER APPLICABLE LAW, ITS RIGHT TO TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF OR RELATED TO THIS NOTE, THE OTHER LOAN DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY, IN ANY ACTION OR PROCEEDING TO WHICH LENDER, BORROWER OR ANY LOAN PARTY MAY BE PARTIES, WHETHER WITH RESPECT TO CONTRACT CLAIMS, TORT CLAIMS, OR OTHERWISE, INCLUDING WITHOUT LIMITATION ANY ACTION, COUNTERCLAIM OR OTHER PROCEEDING WHICH SEEKS, IN WHOLE OR IN PART, TO CHALLENGE THE VALIDITY OR ENFORCEABILITY, OF THIS NOTE OR THE OTHER LOAN DOCUMENTS OR ANY PROVISION HEREOF OR THEREOF.  THIS WAIVER IS MADE KNOWINGLY, WILLINGLY AND VOLUNTARILY, AND BORROWER ACKNOWLEDGES THAT NO REPRESENTATIONS HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT.  THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS NOTE AND THE OTHER LOAN DOCUMENTS.

3120

20. **Power of Attorney**.  Borrower grants Lender a power of attorney to correct obvious errors and fill in such blanks as serial numbers, date of first payment and similar provisions, for registering, transferring, titling, or perfecting Lender's interest in the Equipment and for obtaining repossession certificates of title with respect to the Equipment.  Such power of attorney is coupled with an interest, is delegable to an agent, and is irrevocable during the term of the credit evidenced by this Note.  Borrower agrees that a photocopy of this Note shall be sufficient evidence on which any third party may rely for evidence of Lender's authority to act pursuant to this and any other power of attorney granted hereby.

21. **Miscellaneous**.  The Loan Documents constitute the entire agreement and understanding of Lender and Borrower and supersede all prior agreements.  No provision of any Loan Document can be amended, waived, discharged, or terminated except in writing executed by the parties thereto.  Acceptance of late payments shall not waive the TIME IS OF THE ESSENCE PROVISION, the right of Lender to require that subsequent payments be made when due, or the right of Lender to declare an Event of Default if subsequent payments are not made when due.  Any approval, consent, or statement that a matter is acceptable to Lender under the Loan Documents must be in writing executed by Lender and shall be construed to apply only to the party and facts specifically set forth in writing.  This Note may be authenticated in one or more counterparts each of which when authenticated shall be deemed an original but all of which together shall constitute one and the same instrument. This Note may: (i) take electronic form (constituting an "Electronic Document") pursuant to the Electronic Signatures in Global and National Commerce Act, the Uniform Electronic Transactions Act and/or other applicable law, if generated and stored within a secure electronic medium approved by Lender designed for creating and facilitating transactions entered into using so-called "electronic signatures", (ii) take paper form bearing an ink signature, (iii) take the form of a photocopy of such a paper form, (iv) be delivered in PDF or other fixed-file format, (v) be an electronic facsimile, or (vi) be in any other format deemed acceptable by Lender. Each version of this Note originally authenticated in paper form shall constitute a "Counterpart", and must constitute a true, complete, faithful and legible representation hereof. Borrower agrees that all signatures transmitted by facsimile, email or other electronic means, including, but not limited to, Electronic Documents and Counterpart(s) (as applicable) shall be deemed binding and effective for all legal and equitable purposes including all matters of evidence and the "best evidence" rule, and shall be binding upon and enforceable against Borrower in accordance with its terms in any and all appropriate forums.  Lender may choose to authenticate a Counterpart(s) in writing, through the use of a stamp, or through some other means selected by Lender. (In no event shall any acceptance or acknowledgment be deemed to constitute an indorsement hereof without express use of words to that effect.)  **Notwithstanding anything contained herein to the contrary, the version of this Note bearing Lender's original signature, or, if the Note is fully executed electronically, the authoritative copy as defined by the Uniform Commercial Code, shall constitute the sole record of "chattel-paper" for Code purposes. Perfection by possession (control) of same may only be accomplished by: (i) maintaining possession and control of the Counterpart of this Note authenticated by a duly authorized representative of Lender and not otherwise marked "customer copy" (or words to that effect) or (ii) maintaining, as provided in Article 9 of the Uniform Commercial Code, control of the single authoritative copy of this Note, if in the form of an Electronic Document. _TIME IS OF THE ESSENCE IN THIS NOTE AND THE OTHER LOAN DOCUMENTS_.**

**BORROWER HEREBY CERTIFIES, UNDER PENALTY OF PERJURY, THAT ONE HUNDRED PERCENT (100%) OF THE USE OF THE EQUIPMENT IS TO BE IN A TRADE OR BUSINESS OF BORROWER AND NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES.**

_SIGNER REPRESENTS BEING AUTHORIZED TO BIND BORROWER TO THIS AGREEMENT, AND ACKNOWLEDGES THAT FALSE STATEMENTS ABOUT SUCH AUTHORITY MAY BE FRAUDULENT AND COULD RESULT IN PERSONAL LIABILITY_

Borrower:
Nivo Solar LLC

_____
Signature

JOHN C FRAMPTON - CEO
Printed Name and Title(s)

10/7/22
Date

Co-Borrower [IF APPLICABLE]:

_____
Signature

_____
Printed Name and Title(s)

_____
Date

Lender:
**ISUZU FINANCE OF AMERICA, INC.**
        (Not an indorsement)
By: _____
             (Duly Authorized)

Lender's Name & Mailing Address:
**ISUZU FINANCE OF AMERICA, INC.**
Address:  2500 Westchester Ave., Suite 312
              Purchase, New York  10577
Attention: OPERATIONS

Borrower(s) Name & Address:
Legal Name(s):   Nivo Solar LLC
Street Address (Place of Business):    18719 Big Elm Drive, Cypress, TX 77433       County: _____
Mailing Address:    18719 Big Elm Drive, Cypress, TX 77433
Telephone: [redacted]                      Fax: _____     State of [Formation/Residence]:   Texas
                                 Organization Type:    Limited Liability Company

---

## Delivery and Acceptance Certificate

On 10/14/22 (the "**Date of Acceptance**"), each item of Equipment listed in this Note was delivered to Borrower, in conjunction with Borrower's purchase of the Equipment, and Borrower acknowledges its receipt and irrevocable acceptance of each item of the Equipment.  Borrower represents and warrants to Lender that Borrower has: accepted delivery of and inspected each item of Equipment; determined that each item of Equipment contains all of the major components and accessories as agreed; each item of Equipment is in good working order, repair, and condition; and that each item of Equipment is fit for immediate and continued use and conforms to Borrower's requirements without exception.  Borrower understands and acknowledges that Lender is entering into the Loan Documents based on Borrower's representation and warranty that Borrower will pay in full to Lender all payments when due as required by the Loan Documents.  Borrower also represents and warrants to Lender that no Event of Default or event which, but for the passage of time or the giving of notice, or both, would constitute an Event of Default under the Loan Documents has occurred and is continuing as of the Date of Acceptance and that all of the representations and warranties made by Borrower in the Loan Documents are correct and complete as though made on and as of the date of this Note.

**Borrower's Initials:** _____   **[Co-Borrower's Initials: _____ ]**

# EXHIBIT B

## PURCHASE OF LOAN CONTRACT

This Purchase of Loan Contract (this "Purchase Contract") is executed pursuant to the Master Loan and Sale and Assignment Agreement dated as of May 16, 2007 (the "Agreement"), by and between ISUZU FINANCE OF AMERICA, INC., as Assignor, and TOKYO CENTURY (USA) INC., as Assignee.

This Purchase Contract is dated, and the assignment described below is effective, as of the date set forth below and hereby expressly incorporates the terms and conditions of the Agreement.

| | | |
|---|---|---|
| 1. | Dealer | Auffenberg Group, Inc. |
| 2. | Obligor (Borrower) | Nivo Solar LLC |
| 3. | Guarantor | Frampton, John C. |
| 4. | Date of (Loan) Contract | 10/17/2022 |
| 5. | Contract Documents (See Schedule A) | |
| 6. | Total Invoice Cost (Amount Financed) | $77,878.67 |
| 7. | Payments to be due under Purchase Contract | |
| | (a)  Term | 60 |
| | (b)  Amount of each payment | $1,468.75 |
| | (c)  Balloon Payment | $1,468.75 |
| 8. | Consideration (6) | $77,878.67 |
| 9. | Acquisition Fee to Assignee (TCUSA) | $250.00 |
| 10. | Referral Fee | $700.00 |
| 11. | Dealer Markup | $0.00 |
| 12. | Purchase Amount (8-9+10+11) | $78,328.67 |

Date of Execution:  November 11, 2022

ASSIGNOR:  ISUZU FINANCE OF AMERICA, INC.

By:      _____
Name:  _____
Title:    _____

ASSIGNEE:  TOKYO CENTURY (USA) INC.

By:      _____
Name:  _____
Title:    _____

# EXHIBIT C



Collateral Management Solutions
9750 Goethe Road | Sacramento, CA 95827
www.Vitu.com

# Isuzu Finance of America, Inc.

## Lien and Title Information

### Account Information

| | |
|---|---|
| **Account Number** | |
| **Loan Number** | |
| **Branch** | |
| **Borrower 1** | Nivo Solar LLC |
| **Borrower 2** | |
| **Borrower Address** | 18719 Big Elm Drive Cypress, TX 77433 |

| | |
|---|---|
| **Financed Date** | 11/14/2022 |
| **Perfected Date** | 11/29/2022 |
| **Payoff Date** | |
| **Dealer ID** | |
| **Dealer** | Auffenberg Group Inc. |
| **Dealer Address** | 23005 Katy Freeway Katy, TX 77450 |

### Lienholder

| | |
|---|---|
| **ELT Lien ID** | |
| **Lienholder** | ISUZU FINANCE OF AMERICA INC |
| **Lienholder Address** | 2500 WESTCHESTER AVE 312 PURCHASE, NY 10577 |
| **Title Request Date** | 7/17/2025 |

### Vehicle and Titling Information

| | |
|---|---|
| **VIN** | JALC4J16XP7012585 |
| **Title Number** | 10130644884250053 |
| **Title State** | TX |
| **Year** | 2023 |
| **Make** | ISU |
| **Model** | |
| **Owner 1** | NIVO SOLAR LLC |
| **Owner 2** | |
| **Owner Address** | 18719 BIG ELM DR CYPRESS, TX 77433 |

| | |
|---|---|
| **Issuance Date** | 11/28/2022 |
| **Received Date** | 11/29/2022 |
| **ELT/Paper** | ELECTRONIC |
| **Odometer Reading** | 150 |
| **Branding** | |

**Printed:** Friday, July 18, 2025 7:58:44 AM PST

# EXHIBIT D

3121

## Isuzu Finance of America, Inc.

**Secured Promissory Note**

| | | |
|---|---|---|
| <u>Borrower:</u> | Nivo Solar LLC | <u>Lender/Creditor:</u>  **ISUZU FINANCE OF AMERICA, INC.**   Date: 10/17/2022 |
| Address: | 18719 Big Elm Drive | Address:  2500 Westchester Ave., Suite 312 |
| | Cypress, TX  77433 | Purchase, New York  10577 |
| | | Attention: Operations |

| <u>Year</u> | <u>Make</u> | <u>Model</u> | <u>Vehicle Identification Number</u> | <u>License Number (if applicable)</u> | | <u>Use For Which Purchased</u> |
|---|---|---|---|---|---|---|
| 2023 | Isuzu | NPR-HD | 54DC4J1D8PS202250 | | ☒ NEW ☐ Demonstrator ☐ Other | ☒ BUSINESS OR COMMERCIAL |

Description of Vehicle's Body/Attachments:     16' Dry Van Body
Vehicle Body/Attachments Serial Numbers:
Gross Vehicle Weight:     14500
Address where Vehicle will be located:
Street Address:     18719 Big Elm Drive
City/State/Zip:     Cypress, TX 77433

Interest Rate:   5.35 % per annum.

| | |
|---|---|
| 1. Vehicle Cash Sales Price | $95,000.00 |
| 2. Net Trade-in Less Liens | $0.00 |
| 3. Cash Down Payment | $25,000.00 |
| 4. Net Vehicle Cash Sales Price (1-2-3) | $70,000.00 |
| 5. Other Taxable Charges (Explain) | $0.00 |
| 6. Sales Tax | $6,126.17 |
| 7. Registration/Title Fees | $402.50 |
| 8. Other Charges | |
|     Acquisition Fee | $250.00 |
|     Documentation Fee | $150.00 |
| 9. Total Itemized Charges (5 through 8) | $6,928.67 |
| 10. Amount Financed (4 + 9) | $76,928.67 |
| 11. Finance Charge | $10,925.13 |
| 12. Other (Explain) | |
| 13. Total Obligation (10+11+12) | $87,853.80 |

Borrower agrees to pay the "Total Obligation" (Item 13) in accordance with the following schedule (and any additional page(s) of schedule attached):

| No. of Installments | First Payment Date | Payment Amount | Total |
|---|---|---|---|
| 60 | | $1,464.23 | $87,853.80 |

If shown below, Borrower has elected to finance certain services through this Contract. The terms of each service are contained in separate agreement(s), and Borrower agrees that Lender collects such fees and charges for the service provider only as an accommodation to Borrower and such agreements are not part of this Contract. The Lender is not responsible for any services, disposables or insurance obligations.

| Service | Term (mos.) | Total Charge |
|---|---|---|
| | | |
| | | |
| **Total Charge Is Included In "Vehicle Cash Sales Price"** | | |

**1.**     **Promise to Pay and Interest.** The below-signed borrower, and if more than one, each below-signed borrower, jointly and severally (the **"Borrower"**), promises to pay in full the Total Obligation set forth in Item 13 above to Isuzu Finance of America, Inc. (**"Lender"**) in lawful money of the United States of America, with interest thereon as herein provided, to be paid in the manner set forth herein. All interest due under the Loan Documents (as defined below) shall be computed on the basis of a 360-day year and accrue on a daily basis for the actual number of days elapsed. Borrower agrees to pay an effective rate of interest that is the Interest Rate set forth on page 1 (the **"Interest Rate"**). Borrower shall also be liable for and shall pay when due any other charges or fees paid or to be paid in connection with the Loan Documents. In addition to the Total Obligation, Borrower agrees to pay all other amounts owed to Lender under this Note and the other Loan Documents (collectively with the Total Obligation, the **"Indebtedness"**) when due. Payment of the Indebtedness shall be made to Lender at such place as Lender or its successor may designate from time to time in writing. Lender reserves the right to require payment on this Secured Promissory Note to be made by wired federal funds or other immediately available funds. **"Loan Documents"** shall mean this Secured Promissory Note (this **"Note"**); all other notes (or other instruments) made by, or other obligations of, Borrower to Lender; any guaranty(ies) of any payment or performance of the Indebtedness; and all other agreements or documents evidencing, guaranteeing, securing, or otherwise relating to this Note or the credit evidenced hereby, as any or all of such documents may be executed or amended from time to time.

**2.**     **Security Interest.** In order to secure payment of the Indebtedness and complete and full performance of any Loan Party's obligations to Lender under the Loan Documents, now existing or at any time entered into (the **"Secured Obligations"**), Borrower hereby grants to Lender a security interest in and to the Vehicle and such other equipment and goods as are described above (collectively, the **"Equipment"**), together with all present and future attachments, accessions, replacements, parts, proceeds (including insurance proceeds), income, earnings, accounts, rights to payment (including monetary obligations, whether or not earned by performance), chattel paper, electronic chattel paper, general intangibles, payment intangibles, promissory loans, warranties, service contracts, documents, and records now or hereafter arising from the Equipment (collectively, the **"Collateral"**). Borrower authorizes Lender to file a financing statement, or a photocopy or other reproduction of this Note, or of any financing statement, to perfect its security interest. Principal shall bear interest at the Interest Rate from the date of disbursement until the applicable due date, whether due by acceleration or otherwise. Any payment due on a date which is a date when banking institutions are not open to the public under the laws of the State of New York shall be due on the next succeeding date on which such institutions are open. All Indebtedness not paid when due shall bear interest from the due date, until paid at a rate (the **"Default Rate"**) which is the lesser of sixteen percent (16%) per annum or the maximum rate permitted under applicable law. Borrower is responsible for assuring that a lien on the Collateral in favor of the Lender is properly recorded on any title to the Collateral and that such lien remains in full force and effect until all amounts due Lender hereunder shall have been paid in full.

3.      **Receipt and Application of Payments**.  Payments shall not be deemed received by Lender until good funds are actually received by Lender. Payments in respect of the Secured Obligations and any proceeds of the Collateral when received by Lender in cash or its equivalent, will be applied in reduction of the Secured Obligations in such order and manner as Lender may direct in its sole discretion, and Borrower irrevocably waives the right to direct the application of such payments and proceeds and acknowledges and agrees that Lender shall have the continuing and exclusive right to apply any and all such payments and proceeds in the Lender's sole discretion, notwithstanding any entry to the contrary upon any of its books and records.

4.      **Prepayment**. So long as no Default or Event of Default shall have occurred and be continuing and Borrower shall have given Lender at least fourteen (14) days prior written notice, Borrower shall have the option to prepay this Note on any installment Due Date set forth on page 1 of this Note (or any accompanying schedule referred to on page 1 of this note) (each, an "**Installment Due Date**") for an amount (the "Prepayment Amount") equal to (1) any unpaid Payment Amounts and all other amounts due on or before such Installment Due Date, plus (2) the principal outstanding on the books and records of the Lender on such Installment Due Date, plus (3) any applicable sales taxes.  Payment of the Prepayment Amount, together with all other amounts due and owing by Borrower under the Note (including, without limitation, the scheduled Payment Amount) on or before the Installment Due Date, shall be made on the Installment Due Date in immediately available funds. If Borrower shall fail to pay all amounts required to be paid under the Note on the Installment Due Date, the Note shall continue in full force and effect and Borrower agrees to reimburse Lender for all reasonable attorney's fees, costs, expenses and liabilities incurred in connection therewith.

5.      **Late Charges**.  If any payment of principal and interest or any other Indebtedness is not received in full by Lender within ten (10) days after its due date, then in addition to all other rights and remedies of Lender, a late charge equal to ten percent (10%) of the amount due and unpaid will be charged to Borrower or such lesser amount as shall be the maximum permissible late charge thereon.  Such late charge shall be immediately due and payable upon receipt of written notice from Lender and constitute "**Indebtedness**" and a "**Secured Obligation**" under this Note.

6.      **No Counterclaims, Deductions, or Offsets**.  All payments and obligations of Borrower under the Loan Documents will be made and performed without counterclaim, deduction, defense, deferment, set-off, or reduction.

7.      **Insurance and Risk of Loss**.  All risk of loss, damage or destruction of the Equipment will at all times be on Borrower.  Borrower will keep the Equipment insured at Borrower's expense against liability in an amount as required by Lender or, if in excess thereof, the amount required under applicable law, and loss or damage by fire, theft and other customary risks for the greater of the Equipment's full insurable value or the Indebtedness, with a deductible not to exceed $2,500 per item of Equipment, or such lesser amount as shall be required by applicable law.  Coverage and insurer will be subject to Lender's reasonable approval. Each policy shall name Lender as loss payee and will further provide that Lender's interest can not be invalidated by any act, omissions or neglect of any party other than Lender and that the insurer will give Lender thirty (30) days' advance written notice of any policy cancellation or non-renewal, whether such cancellation or non-renewal is at the direction of Borrower or insurer.  Borrower will promptly deliver a copy of each policy or an insurance certificate acceptable to Lender prior to any advancement of funds hereunder, and will later provide proof of renewal at least 30 days prior to expiration or cancellation.  If Borrower fails to so insure the Equipment, Lender may purchase such insurance at Borrower's expense, the purchase of which need not include liability or protection of Borrower's interest.  Borrower hereby authorizes and  irrevocably appoints Lender as Borrower's attorney-in-fact, coupled with an interest, with full power of substitution,  to execute and endorse all documents, checks, or drafts in Borrower's name and to submit any proof of loss to collect such insurance.

8.      **Borrower's Representations, Warranties, and Agreements**.  Borrower represents, warrants, and agrees that: (a) this Note evidences a loan obtained by it, and the Equipment is to be used by it, solely for business or commercial purposes; (b) prior to signing this Note, Borrower read and understood the provisions hereof, and agrees to all the terms and conditions contained herein; (c) except for the security interest granted to Lender, the Collateral will remain free from all liens and security interests; (d) all information supplied by Borrower in any financial, credit, or accounting statement to Lender is and will be true, correct and genuine, and Borrower consents to the Lender's prior review of Borrower's credit reports prior to the date of this Note and to the ongoing review of Borrower's credit reports during the term of the credit evidenced by this Note; (e) Borrower has full authority to borrow the credit evidenced by this Note for the purposes provided for herein and to enter into each Loan Document to which it is a party, and in so doing it is not violating any law, regulation or agreement; and (f) Borrower has duly executed and delivered this Note and has taken all necessary and appropriate actions to make each Loan Document to which it is a party binding and enforceable against Borrower in accordance with its terms. Borrower covenants and agrees that:  (i) it shall not allow a Blocked Person to have an ownership interest in or control of Borrower, (ii)  it shall defend at its own cost any action, proceeding or claim affecting the Collateral; (iii) it shall maintain each item of the Equipment in good operating condition, repair, and appearance, all in conformity with all governmental regulations, insurance policies, and any warranties; (iv) it shall promptly pay all taxes, assessment, license fees and other public or private charges when levied against the Collateral or any Loan Document; (v) it shall obtain a certificate of title on each item of Equipment showing Lender's first priority security interest and preserve and perfect Lender's security interest, such that such security interest shall at all times be a first priority perfected security interest subject to no other liens or encumbrances by authorizing Lender to file financing statements covering the Collateral and also execute any required financing statements; (vi) it shall not misuse, secrete, sell, rent, encumber or transfer any item of Equipment; (vii) that Lender may enter any premises at any reasonable time to inspect the Equipment; (viii) it shall provide Lender with quarterly and annual financial statements upon request of Lender; and (ix) it shall reimburse Lender immediately after written notice for any expenses incurred by Lender in enforcing Borrower's obligations under any Loan Document.  [As used herein, the term "Blocked Person" means any person or entity that is now or at any time: (A) on a list of Specially Designated Nationals issued by the Office of Foreign Assets Control ("OFAC") of the United States Department of the Treasury or any sectoral sanctions identification list, or (B) a person or entity whose property or interests in property are blocked by OFAC or who is subject to sanctions imposed by law.]

9.      **Events of Default**.  Each of the following shall be an event of default under this Note and the other Loan Documents (an "**Event of Default**"):  (a) failure by the Borrower, or any other person (each, a "**Loan Party**"; and collectively with the Borrower, the "**Loan Parties**") that from time to time is obligated to Lender under any of the Loan Documents, to pay when due (i) any amount due by such Loan Party under any of the Loan Documents, or (ii) any other amount due by a Loan Party to Lender under any other agreement or contract or indebtedness of any kind; (b) failure by any Loan Party to perform any obligation not involving the payment of money, or to comply with any other term or condition applicable to such Loan Party, in any of the Loan Documents and such obligation or term or condition remains unsatisfied after ten (10) days' written notice to such Loan Party; (c) the breach of any covenant, or any representation or warranty made by any Loan Party in any of the Loan Documents or otherwise or any information delivered by any Loan Party to Lender in obtaining or hereafter in connection with the credit evidenced by this Note is materially incomplete, incorrect, or misleading as of the date made or delivered; (d) any Loan Party (i) is unable or admits in writing its inability to pay its monetary obligations as they become due, (ii) makes a general assignment for the benefit of creditors or (iii) applies for or acquiesces in the appointment of a trustee, receiver, or other  custodian for such Loan Party or any of the property of such Loan Party or a trustee, receiver or other custodian is appointed for such Loan Party or any of the property of such Loan Party; (e) commencement of any insolvency or bankruptcy proceeding, or any similar proceeding under any federal, state, local, or foreign law by or against any Loan Party; (f) the death, incompetence, dissolution, or liquidation of any Loan Party; the consolidation or merger of any Loan Party with any other person or entity; or the taking of any action by any Loan Party toward a dissolution, liquidation, consolidation, or merger; (g) any Loan Party or any other person on behalf of any Loan Party claims that any Loan Document or any lien or security interest in any of the Collateral is not legal, valid, binding, or enforceable against any Loan Party, or that that the priority of any lien or security interest securing any of the Secured Obligations is different than the priority represented and warranted in the Loan Documents; (h) any of the Collateral is lost or destroyed; (i) Lender in good faith believes that the prospect of payment or performance hereunder is impaired; (j) there shall be a material change in the management, ownership or control of any Loan Party; (k) if there shall occur an (i) appropriation, (ii) confiscation, (iii) retention, or (iv) seizure of control, custody or possession of any Collateral by governmental authority including, without limitation, any municipal, state, federal or other governmental entity or any governmental agency or instrumentality (all such entities, agencies and instrumentalities shall hereunder collectively be referred to as "**Governmental Authority**"); (l) if anyone in the control, custody or possession of any Collateral or any Loan Party is accused, alleged or charged

(whether or not subsequently arraigned, indicted or convicted) by any Governmental Authority to have used any Collateral in connection with the commission of any crime (other than a misdemeanor moving violation); or (m) the occurrence of any condition or event that is a default or is designated as a default or event of default or an **"Event of Default"** under any other Loan Document or in any other agreement, contract, or indebtedness of any Loan Party to Lender.

10.    **Rights and Remedies of Lender**.  Upon the occurrence of an Event of Default, Lender may, at its option, and without demand or notice:  (a) declare the Indebtedness to be immediately due and payable, whereupon all of the Indebtedness shall be immediately due and payable;  (b) without notice or demand or legal process, take possession of the Collateral wherever located and, for this purpose, may enter upon the property occupied or under the control of Borrower;  (c) require Borrower to make the Collateral available to Lender at a place to be designated by Lender;  (d) at the expense of Borrower, make repairs to any item of Equipment deemed necessary by Lender; and  (e) with or without obtaining possession of the Collateral or any part thereof, sell the same at a public or private sale(s).  The proceeds of any sale(s), after deducting all expenses and costs (including reasonable attorneys' fees and expenses) shall be applied to the Indebtedness or any other indebtedness of Borrower to Lender and any surplus remaining thereafter shall be paid to Borrower or to any other party who may be legally entitled to such surplus.  At any sale or disposition, and as permitted by law, Lender may purchase any or all of the Collateral and/or accept a trade of property for all or any portion of the purchase price.  All rights and remedies are cumulative, not alternative, and shall inure to the benefit of Lender and its successors and assigns.  No liability shall be asserted or enforced against Lender under this section except for Lender's intentional wrongful acts.  Lender may in its sole discretion waive an Event of Default or allow a cure of an Event of Default.  Any waiver will not constitute a waiver of any other Event of Default.  Delay, discontinuance, or failure to exercise any remedy shall not be a waiver of such remedy or of any other right or remedy of Lender, or of the TIME IS OF THE ESSENCE provision.  To the extent permitted under applicable law, Borrower expressly consents to and authorizes a court with jurisdiction to issue, by hearing without notice, such orders as may be necessary to enforce the terms of this Note, granting to Lender such powers as Lender shall need to enforce this Note.  Any such court is directed to not require a bond of Lender, the parties agreeing that time is of the essence to protect Lender.  To the extent permitted under applicable law, Borrower expressly waives any notice of sale or other disposition of the Collateral and of any other exercise of any right or remedy of Lender existing after the occurrence of an Event of Default; and that to the extent that such notices cannot be waived, any notice given to Borrower at the address set forth on page 1 of this Note (or to such other address as provided in writing by Borrower) by registered or certified mail at least five (5) days before the date of sale shall be deemed reasonable and to fully satisfy the requirement for the giving of notice to Borrower.

11.    **Transfer or Assignment**.  Lender may at any time transfer its rights and/or delegate its obligations under the Loan Documents or otherwise negotiate this Note in whole or in part, without any notice to or the consent of any Loan Party.  The rights and obligations of Borrower may not be assigned or delegated.

12.    **Binding Effect**.  This Note shall be binding upon Borrower and inure to the benefit of Lender and its successors and assigns.  In addition and as permitted under applicable law, NO LOAN PARTY SHALL ASSERT AGAINST ANY ASSIGNEE OR TRANSFEREE OF LENDER ANY CLAIMS OR DEFENSES SUCH LOAN PARTY MAY HAVE AGAINST LENDER.

13.    **Collection Costs and Other Costs, Expenses and Fees**.  In addition to the principal, interest, and late payment charges (if any), Borrower shall pay Lender on demand, and Lender shall be entitled to collect all costs and expenses of collection, including, without limitation, reasonable attorneys' fees and expenses, incurred in connection with enforcement of its rights and remedies hereunder and under the other Loan Documents, the protection or realization of the Collateral or in connection with Lender's collection efforts, or in connection with any bankruptcy or other judicial proceeding, whether or not suit on this Note or any foreclosure proceeding is filed.  If this Note is terminated for any reason prior to the expiration of the original Term, then Borrower shall pay to Lender $300.00 on demand for processing the early termination.  All such costs, expenses, and fees shall constitute **"Indebtedness"** and **"Secured Obligations"** and shall be payable on demand.

14.    **Usury; Partial Invalidity**.  At no time shall the interest rate (or the Default Rate or other amounts paid or collected hereunder) exceed the highest rate allowed by applicable law for the type of loan evidenced hereby.  Should Lender ever collect interest at a rate that exceeds such applicable legal limit, such excess will be credited to the outstanding principal balance of the loan evidenced hereby.

15.    **Severability**.  If any provision of any of the Loan Documents is unenforceable, such provision shall be modified to the minimum extent possible to make such provision enforceable, and the enforceability of the other provisions of the Loan Documents shall not be affected.

16.    **Choice of Law**.  The Loan Documents (including all matters of construction, validity, performance and the creation, validity, enforcement or priority of the lien of, and security interests created by, this Note in or upon the Collateral) and all related controversies shall be governed in all respects by, and construed in accordance with, the laws of the State of New York, without reference to conflicts of law (other than Section 5-1401 of the New York General Obligations Law), except as required by mandatory provisions of law and except to the extent that the validity or perfection of the lien and security interest hereunder, or remedies hereunder, in respect of any particular Collateral are governed by the laws of a jurisdiction other than the State of New York.

17.    **Notices and Demands**.  All demands or notices under the Loan Documents shall be in writing (including, without limitation, telecopy or facsimile - receipt confirmed) and mailed, telecopied, or delivered to the address specified on page 1 of this Note or in writing by the party to which such notice is given.  Any demand or notice mailed shall be mailed first-class mail, post-prepaid, return-receipt requested.  Demands or notices shall be effective upon the earlier of (i) actual receipt by the addressee, or (ii) the date shown on the return receipt, fax confirmation, or delivery receipt.

18.    **Rescission or Return of Payments**.  If at any time or from time to time, whether before or after payment and performance of the Indebtedness in full, all or any part of any amount received by the Lender as payment of any Indebtedness, must or is claimed to be subject to avoidance, rescission, or return to Borrower or any other party for any reason whatsoever, such Indebtedness and any liens, security interests, and other encumbrances that secured such Indebtedness at the time such avoidance, rescission, or returned payment was received by Lender shall be deemed to have continued in existence or shall be reinstated, as the case may be, all as though such payment had not been received.

19.    **Waivers**.  Borrower hereby (a) waives, to the fullest extent permitted under applicable law, the right to assert any statutes of limitations as a defense to any of the Indebtedness, (b) waives, to the fullest extent permitted under applicable law, presentment, notice of dishonor, protest, notice of protest, notice of intent to accelerate, notice of acceleration, and all other notices or demands of any kind (except notices specifically provided for in the Loan Documents), and (c) agrees that Lender may enforce this Note and any other Loan Document against Borrower without first having sought enforcement against any other Loan Party or any Collateral securing the Indebtedness.

BORROWER HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED UNDER APPLICABLE LAW, ITS RIGHT TO TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF OR RELATED TO THIS NOTE, THE OTHER LOAN DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY, IN ANY ACTION OR PROCEEDING TO WHICH LENDER, BORROWER OR ANY LOAN PARTY MAY BE PARTIES, WHETHER WITH RESPECT TO CONTRACT CLAIMS, TORT CLAIMS, OR OTHERWISE, INCLUDING WITHOUT LIMITATION ANY ACTION, COUNTERCLAIM OR OTHER PROCEEDING WHICH SEEKS, IN WHOLE OR IN PART, TO CHALLENGE THE VALIDITY OR ENFORCEABILITY, OF THIS NOTE OR THE OTHER LOAN DOCUMENTS OR ANY PROVISION HEREOF OR THEREOF.  THIS WAIVER IS MADE KNOWINGLY, WILLINGLY AND VOLUNTARILY, AND BORROWER ACKNOWLEDGES THAT NO REPRESENTATIONS HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT.  THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS NOTE AND THE OTHER LOAN DOCUMENTS.

B121

20.    **Power of Attorney**.  Borrower grants Lender a power of attorney to correct obvious errors and fill in such blanks as serial numbers, date of first payment and similar provisions, for registering, transferring, titling, or perfecting Lender's interest in the Equipment and for obtaining repossession certificates of title with respect to the Equipment.  Such power of attorney is coupled with an interest, is delegable to an agent, and is irrevocable during the term of the credit evidenced by this Note.  Borrower agrees that a photocopy of this Note shall be sufficient evidence on which any third party may rely for evidence of Lender's authority to act pursuant to this and any other power of attorney granted hereby.

21.    **Miscellaneous**.  The Loan Documents constitute the entire agreement and understanding of Lender and Borrower and supersede all prior agreements.  No provision of any Loan Document can be amended, waived, discharged, or terminated except in writing executed by the parties thereto.  Acceptance of late payments shall not waive the TIME IS OF THE ESSENCE PROVISION, the right of Lender to require that subsequent payments be made when due, or the right of Lender to declare an Event of Default if subsequent payments are not made when due.  Any approval, consent, or statement that a matter is acceptable to Lender under the Loan Documents must be in writing executed by Lender and shall be construed to apply only to the party and facts specifically set forth in writing.  This Note may be authenticated in one or more counterparts each of which when authenticated shall be deemed an original but all of which together shall constitute one and the same instrument. This Note may: (i) take electronic form (constituting an "Electronic Document") pursuant to the Electronic Signatures in Global and National Commerce Act, the Uniform Electronic Transactions Act and/or other applicable law, if generated and stored within a secure electronic medium approved by Lender designed for creating and facilitating transactions entered into using so-called "electronic signatures", (ii) take paper form bearing an ink signature, (iii) take the form of a photocopy of such a paper form, (iv) be delivered in PDF or other fixed-file format, (v) be an electronic facsimile, or (vi) be in any other format deemed acceptable by Lender. Each version of this Note originally authenticated in paper form shall constitute a "Counterpart", and must constitute a true, complete, faithful and legible representation hereof. Borrower agrees that all signatures transmitted by facsimile, email or other electronic means, including, but not limited to, Electronic Documents and Counterpart(s) (as applicable) shall be deemed binding and effective for all legal and equitable purposes including all matters of evidence and the "best evidence" rule, and shall be binding upon and enforceable against Borrower in accordance with its terms in any and all appropriate forums.  Lender may choose to authenticate a Counterpart(s) in writing, through the use of a stamp, or through some other means selected by Lender. (In no event shall any acceptance or acknowledgment be deemed to constitute an indorsement hereof without express use of words to that effect.)  **Notwithstanding anything contained herein to the contrary, the version of this Note bearing Lender's original signature, or, if the Note is fully executed electronically, the authoritative copy as defined by the Uniform Commercial Code, shall constitute the sole record of "chattel-paper" for Code purposes. Perfection by possession (control) of same may only be accomplished by: (i) maintaining possession and control of the Counterpart of this Note authenticated by a duly authorized representative of Lender and not otherwise marked "customer copy" (or words to that effect) or (ii) maintaining, as provided in Article 9 of the Uniform Commercial Code, control of the single authoritative copy of this Note, if in the form of an Electronic Document.** *TIME IS OF THE ESSENCE IN THIS NOTE AND THE OTHER LOAN DOCUMENTS.*

**BORROWER HEREBY CERTIFIES, UNDER PENALTY OF PERJURY, THAT ONE HUNDRED PERCENT (100%) OF THE USE OF THE EQUIPMENT IS TO BE IN A TRADE OR BUSINESS OF BORROWER AND NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES.**

*SIGNER REPRESENTS BEING AUTHORIZED TO BIND BORROWER TO THIS AGREEMENT, AND ACKNOWLEDGES THAT FALSE STATEMENTS ABOUT SUCH AUTHORITY MAY BE FRAUDULENT AND COULD RESULT IN PERSONAL LIABILITY*

Borrower:
**Nivo Solar LLC**

Signature    _JOHN C FRAMPTON - CEO_

Printed Name and Title(s)

Date    _10/17/22_

Co-Borrower [IF APPLICABLE]:

Signature

Printed Name and Title(s)

Date

Lender:
**ISUZU FINANCE OF AMERICA, INC.**
        (Not an indorsement)
By:
        (Duly Authorized)

Lender's Name & Mailing Address:
**ISUZU FINANCE OF AMERICA, INC.**
Address:  2500 Westchester Ave., Suite 312
          Purchase, New York  10577
Attention: OPERATIONS

Borrower(s) Name & Address:
Legal Name(s):  Nivo Solar LLC
Street Address (Place of Business):  18719 Big Elm Drive, Cypress, TX 77433          County:
Mailing Address:  18719 Big Elm Drive, Cypress, TX  77433
Telephone:                              Fax:                    State of [Formation/Residence]:  Texas
                                        Organization Type:  Limited Liability Company

## Delivery and Acceptance Certificate

On _10/17/22_ (the "**Date of Acceptance**"), each item of Equipment listed in this Note was delivered to Borrower, in conjunction with Borrower's purchase of the Equipment, and Borrower acknowledges its receipt and irrevocable acceptance of each item of the Equipment.  Borrower represents and warrants to Lender that Borrower has: accepted delivery of and inspected each item of Equipment; determined that each item of Equipment contains all of the major components and accessories as agreed; each item of Equipment is in good working order, repair, and condition; and that each item of Equipment is fit for immediate and continued use and conforms to Borrower's requirements without exception. Borrower understands and acknowledges that Lender is entering into the Loan Documents based on Borrower's representation and warranty that Borrower will pay in full to Lender all payments when due as required by the Loan Documents. Borrower also represents and warrants to Lender that no Event of Default or event which, but for the passage of time or the giving of notice, or both, would constitute an Event of Default under the Loan Documents has occurred and is continuing as of the Date of Acceptance and that all of the representations and warranties made by Borrower in the Loan Documents are correct and complete as though made on and as of the date of this Note.

**Borrower's Initials:** _____  **[Co-Borrower's Initials:** _____ ]

# EXHIBIT E

## PURCHASE OF LOAN CONTRACT

This Purchase of Loan Contract (this "Purchase Contract") is executed pursuant to the Master Loan and Sale and Assignment Agreement dated as of May 16, 2007 (the "Agreement"), by and between ISUZU FINANCE OF AMERICA, INC., as Assignor, and TOKYO CENTURY (USA) INC., as Assignee.

This Purchase Contract is dated, and the assignment described below is effective, as of the date set forth below and hereby expressly incorporates the terms and conditions of the Agreement.

| | | |
|---|---|---|
| 1. | Dealer | Auffenberg Group, Inc. |
| 2. | Obligor (Borrower) | Nivo Solar LLC |
| 3. | Guarantor | Frampton, John C. |
| 4. | Date of (Loan) Contract | 10/17/2022 |
| 5. | Contract Documents (See Schedule A) | |
| 6. | Total Invoice Cost (Amount Financed) | $76,928.67 |
| 7. | Payments to be due under Purchase Contract | |
| | (a) Term | 60 |
| | (b) Amount of each payment | $1,464.23 |
| | (c) Balloon Payment | $1,464.23 |
| 8. | Consideration (6) | $76,928.67 |
| 9. | Acquisition Fee to Assignee (TCUSA) | $250.00 |
| 10. | Referral Fee | $700.00 |
| 11. | Dealer Markup | $0.00 |
| 12. | Purchase Amount (8-9+10+11) | $77,378.67 |

Date of Execution:  November 14, 2022

ASSIGNOR:  ISUZU FINANCE OF AMERICA, INC.

By:       _____
Name:   _____
Title:     _____

ASSIGNEE:  TOKYO CENTURY (USA) INC.

By:       _____
Name:   _____
Title:       _____

# EXHIBIT F



Collateral Management Solutions
9750 Goethe Road | Sacramento, CA 95827
www.Vitu.com

# Isuzu Finance of America, Inc.

## Lien and Title Information

### Account Information

| | |
|---|---|
| **Account Number** | |
| **Loan Number** | |
| **Branch** | |
| **Borrower 1** | Nivo Solar LLC |
| **Borrower 2** | |
| **Borrower Address** | 18719 Big Elm Drive<br>Cypress, TX 77433 |

| | |
|---|---|
| **Financed Date** | 11/14/2022 |
| **Perfected Date** | 11/29/2022 |
| **Payoff Date** | |
| **Dealer ID** | |
| **Dealer** | Auffenberg Group Inc. |
| **Dealer Address** | 23005 Katy Freeway<br>Katy, TX 77450 |

### Lienholder

| | |
|---|---|
| **ELT Lien ID** | |
| **Lienholder** | ISUZU FINANCE OF AMERICA INC |
| **Lienholder Address** | 2500 WESTCHESTER AVE 312<br>PURCHASE, NY 10577 |
| **Title Request Date** | 7/17/2025 |

### Vehicle and Titling Information

| | |
|---|---|
| **VIN** | JALC4J16XP7012585 |
| **Title Number** | 10130644884250053 |
| **Title State** | TX |
| **Year** | 2023 |
| **Make** | ISU |
| **Model** | |
| **Owner 1** | NIVO SOLAR LLC |
| **Owner 2** | |
| **Owner Address** | 18719 BIG ELM DR<br>CYPRESS, TX 77433 |

| | |
|---|---|
| **Issuance Date** | 11/28/2022 |
| **Received Date** | 11/29/2022 |
| **ELT/Paper** | ELECTRONIC |
| **Odometer Reading** | 150 |
| **Branding** | |

**Printed:** Friday, July 18, 2025 7:58:44 AM PST

# EXHIBIT G

**UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| NIVO SOLAR LLC, | § | Case No. 25-33752 |
| | § | |
| Debtor. | § | |
| | § | CHAPTER 7 |

**AGREED ORDER GRANTING RELIEF FROM AUTOMATIC STAY**

This matter is before the Court on the Motion of Tokyo Century (USA) Inc. ("Tokyo Century"), with the consent of the Chapter 7 Trustee, for entry of an Agreed Order granting Tokyo Century relief from the Automatic Stay filed on January 7, 2026 ("Motion") [Doc. ____]

The Court finding that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C §§ 157 and 1334; (b) this is a core proceeding pursuant to 28 U.S.C § 157(b)(2); (c) venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409; (d) terms not otherwise defined herein shall have the meaning ascribed to them in the Motion; (e) notice of the filing of the Motion being adequate and appropriate under the circumstances and in compliance with applicable Federal Rules of Bankruptcy Procedure and the Local Rules of this Court; and the Court being fully advised in the premises and for good cause shown, it is hereby ORDERED, ADJUDGED AND DECREED as follows:

1) The Motion is granted and Tokyo Century is hereby granted immediate relief from the automatic stay imposed by 11 U.S.C § 362, which is hereby terminated as to the:

　　• One (1) 2023 Isuzu NPR-HD Crew, VIN: JALC4JI6XP7012585; and

　　• One (1) 2023 Isuzu NPR-HD, VIN: 54DC4J1D8PS202250

2) Tokyo Century is hereby granted immediate relief from the fourteen (14) day stay imposed by Fed. R. Bankr. P. 4001.

1

SO ORDERED.

Agreed:

TOKYO CENTURY (USA) INC.,

/s/ Dennis A. Dressler
Dennis A. Dressler (IL #6271183)
Dressler |Peters, LLC
101 W. Grand Ave., Suite 404
Chicago, IL 60654
Phone: (312) 602-7360
Fax: (312) 637-9378
Email: ddressler@dresslerpeters.com

/s/ Allison D. Byman
Allison D. Byman, Esq.
Chapter 7 Trustee
Byman and Associates, PLLC
7924 Broadway, Suite 104
Pearland, TX 77581
281-884-9269
Email: ab@bymanlaw.com

Reserved For Judge Signature

2